MOORE, Judge.
C.L.W. appeals from a judgment of the Madison Juvenile Court (“the juvenile court”) purportedly determining that D.S. is the legal father of J.W. (“the child”), who was born on April 9, 2009. We dismiss the appeal.

Procedural History

On February 28, 2011, the Madison County Department of Human Resources (“DHR”) filed a petition alleging that the child was dependent. DHR alleged that the child’s mother is S.W. (“the mother”) and that the mother had identified her husband, C.L.W., as the father of the child. On June 7, 2011, the juvenile court entered separate judgments finding the child dependent and awarding custody of the child to DHR.
In October 2011, D.S. wrote a letter to the DHR caseworker for the child stating that he is the child’s father and requesting that DNA testing be done. On March 9, 2012, A.S. filed a motion requesting, among other things, that she and D.S. be added as parties, that she be awarded custody of the child, and that the juvenile court order DNA paternity testing. A.S. alleged, among other things, that she is the biological paternal grandmother of the child and that the child had lived with her from the time he was three months old until February 23, 2011, when DHR removed him from her home. On March 16, 2012, the juvenile court denied A.S.’s request that she and D.S. be allowed to intervene as parties; it also denied her request for custody. The juvenile court, however, granted the motion for DNA paternity testing. On April 19, 2012, the results of the DNA paternity testing were filed with the juvenile court; those results indicated that there was a 99.998% probability that D.S. was the biological father of the child. On June 7, 2012, A.S. filed a motion requesting that she be allowed to intervene, that D.S. be allowed to intervene, that D.S. be adjudicated as the child’s father, and that she be awarded custody of the child. On June 19, 2012, D.S. filed a motion to stay the proceedings and for appointment of counsel. He asserted that he was the biological father of *1085 the child. After a July 12, 2012, hearing, the juvenile court entered an order on July 30, 2012, stating:
“This cause came before the Juvenile Court of Madison County, Alabama, on July 12, 2012, for hearing on the issue of paternity of the ... child. It appears to the Court that there are conflicting statutory presumptions with regard to the child’s paternity. It further appears that [D.S.] is a necessary party to these proceedings; that he is entitled to representation by counsel; and that he has not been properly served process.
“It is therefore ORDERED, ADJUDGED and DECREED by the Court as follows:
“1. The evidentiary hearing in this case is continued and will be held on August 28, 2012....
“2. Counsel for [DHR] shall perfect service of process on [D.S.].
“3. Christopher Messervy, Esquire, is appointed to represent [D.S.].”
On August 23, 2012, a hearing was held regarding the child’s paternity. On August 27, 2012, C.L.W. filed a motion to dismiss D.S. as a party and a brief in support of his position that his status as the child’s presumptive father precluded any paternity challenge. C.L.W. also requested that the juvenile court enter an order stating that he is the father of the child. On August 30, 2012, D.S. filed a motion requesting that an evidentiary hearing be held on whether C.L.W. is the presumed father of the child. On August 31, 2012, C.L.W. filed a motion in opposition to D.S.’s motion, asserting that a hearing had already been held on August 23, 2012.
On September 24, 2012, the juvenile court entered an order following a review hearing that had been held on September 7, 2012. The juvenile court maintained custody of the child with DHR, noted that C.L.W. is the “legally presumed father” of the child, and stated that DHR must explore relative resources after the juvenile court determines the child’s paternity.
Following a review hearing on March 8, 2013, the juvenile court entered an order on June 25, 2013, noting that “[a]lso present at the hearing were the following non-parties and representatives: ... [D.S.,] the father of [J.W.],” and ordering, among other things, that DHR was to retain temporary custody of the child and that a review hearing would be held in September 2013. On July 5, 2013, C.L.W. filed a motion to alter, amend, or vacate the June 25, 2013, order or, in the alternative, to clarify the juvenile court’s June 25, 2013, order to the extent that it “list[ed]” D.S. as the father of the child. On August 2, 2013, C.L.W. filed his notice of appeal.

Discussion

On appeal, C.L.W. challenges the juvenile court’s June 25, 2013, order to the extent that it adjudicated D.S. as the father of the child. C.L.W. argues that, as the husband of the mother, he is the legally presumed father of the child, see Ala. Code 1975, § 26-17-204(a)(l), and that, unless D.S. proves that C.L.W. no longer persists in his claim of paternity, D.S. cannot be declared the father of the child. See Ala.Code 1975, § 26-17-607; and Ex parte Presse, 554 So.2d 406 (Ala.1989). C.L.W. argues that the juvenile court erred in adjudicating D.S. to be the legal father of the child because the evidence proves that C.L.W. has consistently persisted in his claim of paternity. We need not address the substance of those arguments, however, because we conclude that the juvenile court did not adjudicate D.S. to be the legal father of the child.
The record shows that the juvenile court held a hearing on August 23, 2012, to take evidence regarding the paternity of the child. On September 24, 2012, the juvenile court identified C.L.W. as the legally pre *1086 sumed father of the child, but it expressly stated that it had not yet decided paternity. On June 25, 2013, the juvenile court entered an order following a review hearing. In listing the parties attending that review hearing, the juvenile court identified D.S. as “the father” of the child. However, the juvenile court did not refer further to the paternity dispute or otherwise indicate that it intended to resolve that dispute by listing D.S. as the father of the child. Given the significance of the matter, we conclude that the juvenile court did not intend to decide who was the legal father of the child in such an offhand manner and that its designation of D.S. as the father of the child in its review order was not so clear and certain as to constitute a judgment on the merits of the paternity dispute. See Carroll v. Buttram, 758 So.2d 1097 (Ala.1999) (holding that a judgment must be clear and unambiguous in order to stand). That controversy remains pending before the juvenile court without a final adjudication.
“Without a final judgment, this Court is without jurisdiction to hear an appeal.” Ex parte Wharfhouse Rest. & Oyster Bar, Inc., 796 So.2d 316, 320 (Ala.2001). “When it is determined that an order appealed from is not a final judgment, it is the duty of the [appellate court] to dismiss the appeal ex mero motu.” Powell v. Republic Nat’l Life Ins. Co., 293 Ala. 101, 102, 300 So.2d 359, 360 (1974). We, therefore, dismiss the appeal.
APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ„ concur.